UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN GREGORY WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LORI KOHLER, et al.,<br><br>　　　　Defendants. | Case No. 13-5213 VC (PR)<br><br>**ORDER OF SERVICE** |

Steven Gregory Williams, currently incarcerated at the RJ Donovan Correctional Facility, filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against Dr. Lori Kohler, Dr. Timothy Friederichs and Dr. Kathleen Tonti-Horne, employees at the California Correctional Training Facility ("CTF") where Williams was previously incarcerated and Dr. Juan Calzetta, a surgeon at the Natividad Medical Center ("Natividad"). Williams alleges that the defendants were deliberately indifferent to his serious medical needs. Williams' motion to proceed in forma pauperis ("IFP") has been granted. With leave of the Court, Williams filed a First Amended Complaint ("FAC"). The Court now addresses the claims asserted in Williams' FAC.

**DISCUSSION**

**I.　　Standard of Review**

A federal court must screen any case in which a prisoner seeks redress from a governmental entity, or officer or employee of a governmental entity, to dismiss any claims that: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a).

Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right. *Lemire v. California Dep't of Corrections & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or fails to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains. *Leer*, 844 F.2d at 633.

But there is no respondeat superior liability under Section 1983. *Lemire*, 726 F.3d at 1074. That is, a supervisor is not liable merely because the supervisor is responsible, in general terms, for the actions of another. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984). A supervisor may be liable only on a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). It is insufficient for a plaintiff to allege generally that supervisors knew about the constitutional violation or that they generally created policies and procedures that led to the violation, without alleging "a specific policy" or "a specific event" instigated by the supervisors that led to the constitutional violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

**II.  Williams' Allegations**

In Williams' original complaint he named only Kohler and Calzetta as defendants. The Court found that Williams' "summary statements that defendants violated his constitutional rights

2

is insufficient. Plaintiff must allege specific facts as to each individual defendant's actions which violated his rights." Doc. no. 12 at 2. The Court noted that the complaint, liberally construed, at most stated a claim of negligence. *Id.* at 3. In his FAC, Williams alleges the following occurred:

Williams has an infectious disease called disseminated coccidioidomycosis, commonly known as Valley Fever. He was incarcerated at CTF from February 2009 through November 21, 2011. During this time, Friederichs was a staff physician and the Chief Medical Officer at CTF, Tonti-Horne and Kohler were Williams' primary care physicians, and Calzetta was employed by Natividad Medical Center as a vascular surgeon under contract with the California Department of Corrections and Rehabilitation ("Department of Corrections") to provide medical care for inmate-patients.

From January through March 2010, Friederichs and Tonti-Horne had Williams transported from CTF to Natividad for Calzetta to determine whether Williams had peripheral vascular disease and whether surgery would improve his ability to walk. After Calzetta reviewed Williams' medical tests, examined his lower extremities and ordered additional diagnostic tests, he concluded that Williams had severe peripheral vascular disease and recommended surgery. Williams agreed to have Calzetta perform a bilateral femoral popliteal bypass on both his legs.[1] The surgery was performed on April 19 and April 23, 2010. After the surgery, Friederichs and Tonti-Horne arranged for Williams to be moved from Natividad to a prison hospital at California State Prison-Corcoran so that he could receive physical therapy sessions. On May 5, 2010, Williams was returned to CTF where he was to continue to receive physical therapy.

After the surgery, Williams developed painful swelling in his right leg. From May 20 through November 9, 2010, Williams asked Tonti-Horne to refer him for a magnetic resonance imaging ("MRI") examination to diagnose the cause of the swelling. From May 28, 2010 through November 21, 2011, Williams was transported to Natividad to see Calzetta for six follow-up

---

[1] Femoropopliteal Bypass ("Fem-Pop Bypass") surgery is used to bypass diseased blood vessels above or below the knee. To bypass the blocked blood vessel, blood is redirected through a healthy blood vessel that has been transplanted or a man-made graft material. http://www.webMD.com/z-to-z-guides/femoropopliteal-bypass-gem-pop-bypass-for-peripheral-arterial-disease (last visited May 2, 2014).

3

visits. Calzetta was unable to diagnose the cause of the swelling in Williams' leg and, on July 22, 2011, he recommended that Kohler consider performing an MRI.[2] From December 2010 through November 21, 2011, Williams filed three written requests for Kohler to refer him for an MRI examination, but she did not do so. During this time, Kohler examined Williams approximately ten times. At these examinations, Williams continued to suffer from a swollen leg as well as sore and bloodshot eyes, a persistent cough, chills, night sweats, joint and muscle pain, fatigue and blood in his urine. Although not specifically alleged in the FAC, the strong implication of Williams' allegations is that Kohler did not order an MRI examination for Williams.

Williams was transferred to San Quentin State Prison in November 2011. In December 2011, he was transported to Marin General Hospital to undergo a CT angiogram at the request of his new primary care physician. In March 2012, Dr. Laura Kim Pak, a cardiovascular expert, determined that Williams' symptoms were the result of a large fluid collection surrounding the graft that had been performed by Calzetta. Williams underwent surgery to evacuate the fluid collection and remove the bypass graft. Since this surgery, Williams has been followed by an infectious disease expert through telemedicine consultations. Since his March 2012 surgery, Williams has been in severe pain and continues to suffer from cocci complications.

### III. Williams' Claims

Williams asserts that since August 2006, the Department of Corrections and California Department of Health Services were working together to protect inmate patients at high risk of Valley Fever but that the defendants failed to protect and treat him and risked sending him to a dangerous environment.[3]

To establish an Eighth Amendment violation based on the failure to attend to medical

---

[2] Although not alleged in the FAC, it appears that Williams' primary care physician changed from Tonti-Horne to Kohler sometime in late 2010.

[3] Williams refers to Exhibits E and F attached to his FAC which are memoranda from the Department of Corrections dated August 2006 and November 2007 addressed to Health Care Managers and Wardens of California prisons informing them that inmates had recently contracted Valley Fever at several prisons and that inmates most susceptible to this disease were to be transferred to other institutions. The memoranda identified six clinical criteria that defined susceptible inmates.

needs, a prisoner must allege both (1) a serious medical need and (2) deliberate indifference to that need by prison officials. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992). A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). Instead, deliberate indifference involves a purposeful act or failure to act. *McGuckin*, 974 F.2d at 1060. Deliberate indifference may be shown when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which they provide medical care. *Id.* at 1062.

Liberally construed, Williams' FAC appears to satisfy *Farmer*'s objective prong by alleging that he has Valley Fever, a condition that significantly worsens without treatment. Liberally construed, the FAC appears to satisfy *Farmer*'s subjective prong in regard to Kohler and Tonti-Horne by alleging that they were Williams' primary care physicians who saw him regularly, that they refused or ignored Williams' repeated requests for an MRI or other diagnostic tests to determine the cause of his painful swollen leg, and that they did not provide him with the necessary treatment, which he received only after he was transferred to another institution and was treated by another primary care physician.

However, Williams' FAC does not adequately allege that Calzetta or Friederichs were deliberately indifferent to his serious medical needs. The FAC contains minimal allegations against Friederichs—that, as Chief Medical Officer, he was responsible for ensuring that primary care doctors at CTF provided adequate care to inmate-patients and that he helped arrange for Williams to receive medical treatment and post-surgical care from Calzetta. This is insufficient to show that Friederichs was personally involved in the alleged constitutional violation. *See Henry A.*, 678 F.3d at 1003-04; *Taylor*, 880 F.2d at 1045. To the contrary, the allegations that Friederichs arranged medical treatment for Williams suggest that he was attentive to Williams'

1   medical needs, not that he was deliberately indifferent to them.

2   Regarding Calzetta, the FAC alleges that Williams was referred to Calzetta for medical
3   treatment and that Calzetta diagnosed Williams, performed surgery he thought was necessary and
4   provided follow-up medical care.  That the diagnosis may have been incorrect and the surgery may
5   have led to complications, does not show that Calzetta denied, delayed or interfered with
6   Williams' medical treatment.  As discussed in the Court's Order of Dismissal, the allegations
7   against Calzetta may state a claim for negligence, but they do not rise to the level of deliberate
8   indifference.

9   The memoranda regarding transferring inmates susceptible to Valley Fever attached to the
10  FAC is insufficient to state a claim against any of the named defendants; the FAC fails to allege
11  how Williams was a "susceptible" inmate and how any defendant was responsible for determining
12  where Williams would be housed.

## CONCLUSION

14  For the foregoing reasons, the Court orders as follows:

15  1. The Eighth Amendment claim against Friederichs and Calzetta for deliberate
16  indifference to serious medical needs is dismissed.  Dismissal is without leave to amend as
17  Williams has already been granted leave to amend and has failed to state a claim against these
18  people.

19  2. Williams states a cognizable Eighth Amendment claim for deliberate indifference to
20  serious medical needs against Kohler and Tonti-Horne.

21  3. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of
22  Service of Summons, two copies of the Waiver of Service of Summons, a copy of the FAC
23  (docket no. 13) and all attachments thereto and a copy of this Order to Defendants Kohler and
24  Tonti-Horne at CTF.  The Clerk shall also mail a courtesy copy of the FAC with all attachments
25  and a copy of this Order to the State Attorney General's Office in San Francisco, and a copy of
26  this Order to Williams.

27  3. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires
28  them to cooperate in saving unnecessary costs of service of the summons and FAC.  Pursuant to

1  Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of
2  Williams, to waive service of the summons, fail to do so, they will be required to bear the cost of
3  such service unless good cause be shown for their failure to sign and return the waiver forms.  If
4  service is waived, this action will proceed as if Defendants had been served on the date that the
5  waiver is filed, except that pursuant to Rule 12(a)(1)(A)(ii), Defendants will not be required to
6  serve and file an answer or other responsive pleading before sixty days from the date on which the
7  request for waiver was sent.  (This allows a longer time to respond than would be required if
8  formal service of summons is necessary.)

9      Defendants are advised to read the statement set forth at the foot of the waiver form that
10 more completely describes the duties of the parties with regard to waiver of service of the
11 summons.  If service is waived after the date provided in the Notice but before Defendants have
12 been personally served, the answer shall be due sixty days from the date on which the request for
13 waiver was sent or twenty days from the date the waiver form is filed, whichever is later.

14     4.  Defendants shall answer or otherwise respond to the FAC in accordance with the
15 Federal Rules of Civil Procedure.  The following briefing schedule shall govern dispositive
16 motions in this action:

17     a.  No later than thirty days from the date the answer is due, Defendants shall file a
18 motion for summary judgment or other dispositive motion.  If Defendants file a motion for
19 summary judgment, it shall be supported by adequate factual documentation and shall conform in
20 all respects to Federal Rule of Civil Procedure 56.  If Defendants are of the opinion that this case
21 cannot be resolved by summary judgment, they shall so inform the Court prior to the date the
22 summary judgment motion is due.  All papers filed with the Court shall be promptly served on
23 Williams.

24     At the time of filing the motion for summary judgment or other dispositive motion,
25 Defendants shall comply with the Ninth Circuit's decision in *Woods v. Carey*, 684 F.3d 934 (9th
26 Cir. 2012), and provide Williams with notice of what is required of him to oppose a summary
27 judgment motion.

28     b.  Williams' opposition to the motion for summary judgment or other dispositive

motion shall be filed with the Court and served on Defendants no later than twenty-eight days after the date on which Defendants' motion is filed.

Before filing his opposition, Williams is advised to read the notice that will be provided to him by Defendants when the motion is filed, and Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Williams is cautioned that because he bears the burden of proving his allegations in this case, he must be prepared to produce evidence in support of those allegations when he files his opposition to Defendant's summary judgment motion. Such evidence may include sworn declarations from himself and other witnesses, and copies of documents authenticated by sworn declaration. Williams will not be able to avoid summary judgment simply by repeating the allegations of his FAC.

    c. Defendants shall file a reply brief no later than fourteen days after the date Williams' opposition is filed.

    d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

5. Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Williams and any other necessary witnesses confined in prison.

6. All communications by Williams with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or counsel.

7. It is Williams' responsibility to prosecute this case. Williams must keep the Court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

8. Extensions of time are not favored, though reasonable extensions will be granted. Any

1  motion for an extension of time must be filed no later than ten days prior to the deadline sought to
2  be extended.
3  **IT IS SO ORDERED.**
4  Dated: May 5, 2014

_____
VINCE CHHABRIA
United States District Judge