UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN GREGORY WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LORI KOHLER, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-05213-VC<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 109 |

**I**

Steven Williams, a prison inmate, sued two of his medical treatment providers under the Eighth Amendment. Williams originally represented himself, but eventually the Court referred the case for appointment of pro bono counsel. After counsel was appointed, Williams was allowed to file a second amended complaint, and the defendants moved to dismiss it. The Court dismissed the claims against one of the treatment providers, but denied the motion to dismiss the claims against Dr. Lori Kohler. After further discovery, Kohler moved for summary judgment.

The focus of Williams's Eighth Amendment argument has shifted during this case. At some points he seemed to allege that his providers were deliberately indifferent to the risk that he had an infection called "Cocci" (coccidioidomycosis) in his leg. But by the time of the summary judgment proceedings, Williams had trained his focus on two more general arguments. He argued that Kohler failed to diagnose or treat an infection in his right leg (regardless of whether

it was a Cocci infection or some other type of infection, although it indeed turned out to be Cocci). And he argued, even more generally, that Kohler simply didn't do enough to investigate the pain in his right leg.

Kohler was Williams's primary care physician at the Correctional Training Facility in Soledad, California from December 2010 to November 2011. Before that time – in April 2010 – Williams had surgeries on both his legs to alleviate the symptoms of vascular disease. The surgery involved inserting grafts in both legs to bypass blocked blood vessels. Williams repeatedly complained of numbness, pins-and-needles sensation, and pain in both legs following the surgeries. Until roughly June 2011 (which is around six months after Kohler became his doctor) Williams's complaints of pain were, relatively speaking, non-urgent and non-specific. But around June 2011, Williams's complaints started to focus more on his right leg, and his complaints suggested that the pain was getting worse. Williams's leg was swollen. In September, he complained of "shooting" pain at the site of his surgical scar, and also an "electric vibration" that went down to his calf and ankle. At one point he said the pain was at a level nine on a scale of zero to ten.

From the time Williams's complaints began to focus more on the right leg until he left Kohler's care in November 2011, Kohler ordered a number of tests. She requested a carotid ultrasound to rule out deep venous thrombosis, an EMG (electromyogram) to assess the "pins and needles" sensation, and a nerve conduction study to evaluate the pain. Kohler also steadily increased Williams's pain medication. For the most part, Kohler's notes indicate that she suspected Williams was suffering from nerve pain based on his prior surgery, although her notes also mention possible vascular pain and a Bakers cyst at the knee, which prompted her to order an x-ray to identify possible osteoarthritis.

2

In November 2011, Williams was transferred to San Quentin prison. He continued to complain of pain in his right leg, and his treatment providers at San Quentin increased his pain medication even more. He went to the Marin General Hospital emergency room on December 30, 2011, but a CT angiogram revealed that he did not have significant swelling or fluid retention.

Then, on March 19, 2012, Williams saw Dr. Laura Pak at Marin General Hospital. Pak's letter to the San Quentin doctors following the visit references the lack of fluid during the December 30 visit, but states that by March there was fluid collection around the graft in his right leg. Dr. Pak's letter states as follows: "Although conceivable this could represent a graft infection[, h]e does not show any signs of toxicities. I think this is low on the list of potential diagnosis." Dr. Pak suggested that, instead, the fluid "may represent large seroma or lymphocele or alternatively it could be old hematoma." Dr. Pak proposed surgery to drain the fluid from the leg and possibly remove the graft.

The surgery took place on March 27. Dr. Pak's notes following the surgery state that the graft appeared to be infected, and she sent it for testing. The test came back positive for Cocci.

## II

The question whether to grant summary judgment for Kohler based on her treatment of Williams is a close one. But at the end of the day, even when the record is viewed in a light most favorable to Williams, no reasonable jury could conclude that Kohler was actually aware of, and disregarded, a serious risk that Williams's leg was infected. Nor could a reasonable jury conclude that Kohler was deliberately indifferent to Williams's increasing pain.

With respect to the infection, there may have been warning signs, but they were not so obvious that a jury could infer that Kohler had actually identified those warning signs and chosen

3

to disregard them. *Farmer v. Brennan*, 511 U.S. 825, 842-43 & n.8 (1994). In this respect, Williams's situation is different from cases like *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (reversing dismissal of complaint against defendant who diagnosed the plaintiff with a hernia); *Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006) (evidence that the plaintiff sent the defendant a letter describing his need to see a doctor to set and cast his fractured thumb); *Lolli v. County of Orange*, 351 F.3d 410, 420 (9th Cir. 2003) (evidence that the plaintiff told the officers he was diabetic and needed food); *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (evidence that the defendant prison doctor confirmed the hospital's instruction to give the plaintiff food he could drink through a straw and plaintiff complained to prison officials that he was unable to drink his food through a straw); *Ortiz v. City of Imperial*, 884 F.2d 1312, 1313-14 (9th Cir. 1989) (undisputed that the defendants knew the plaintiff had a head injury and disregarded evidence of complications to which they had been specifically alerted); and *Hunt v. Dental Dep't*, 865 F.3d 198, 200-01 (9th Cir. 1989) (the plaintiff complained to the defendants that without new dentures his teeth were breaking and bleeding and he was unable to eat properly). Indeed, if it were possible that Kohler was disregarding an obvious risk of infection in Williams's right leg, one would have expected that obvious risk to be confirmed at the Marin General Hospital emergency room in December 2011, and one would have expected Dr. Pak to fear an infection during the March 19, 2012 visit rather than expressing doubt that an infection was the source of Williams's pain.

Nor is this a situation in which a treatment provider simply ignored the patient's needs; rather, Kohler treated Williams but apparently did so incorrectly. *Cf. Mata v. Saiz*, 427 F.3d 745, 758 (10th Cir. 2005). Williams's arguments about the possibility of infection at most amount to a misdiagnosis. "But a misdiagnosis, even if rising to the level of medical malpractice, is simply

4

insufficient . . . to satisfy the subjective component of a deliberate indifference claim." *Self v. Crum*, 439 F.3d 1227, 1234 (10th Cir. 2006).  Even if Kohler exhibited an "aberrant level of inattention" in failing to identify various indicators of infection, as the plaintiff's expert concluded, this evidence does not create a genuine issue regarding Dr. Kohler's subjective knowledge of risk.  Grant Decl. ¶ 23; *see id.*; *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[T]o prevail on a claim involving choices between alternative choices of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' *and* was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" (emphasis added)); *see also Brook Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1440 (9th Cir. 1995) ("Assertions in expert affidavits do not automatically create a genuine issue of material fact.").

      Similarly, no reasonable jury could conclude that Kohler violated the Eighth Amendment in the more general sense asserted by Williams, namely, by failing adequately to pursue the cause of the pain in his right leg.  To the contrary, her notes reflect a belief that Williams was experiencing pain in the nerves ("neuropathy") and pain from blockage in the arteries ("vascular" pain), and she prescribed medication for it.  Even when presented with an unusual symptom – the source of pain at Williams's scar – Dr. Kohler's notes suggest that she continued believing neuropathy was "likely."  While Kohler may have been wrong in hindsight, it is perhaps not surprising that she did not conduct further testing: Williams came to Kohler having had surgery on both his legs because of vascular disease.  And again, the people who treated Williams after

5

he left Kohler's care (people at San Quentin and Marin General Hospital) were similarly unable to identify the source of his pain for many months.  Under these circumstances, a reasonable jury could not conclude that Kohler's decision to treat Williams primarily with pain management, without aggressively testing for causes of pain, reflected deliberate indifference to a known risk. *See Toguchi*, 391 F.3d at 1059-60; *cf. McElligott v. Foley*, 182 F.3d 1248, 1257-58 (11th Cir. 1999) (doctor's approach to pain management was so incongruous with the symptoms that jury could find it "so cursory as to amount to no care at all").

## III

Accordingly, Kohler's motion for summary judgment is granted.  One final note, however.  If there were a genuine issue of fact on deliberate indifference, Kohler would not be entitled to qualified immunity.  This is the type of case where a factual dispute precluding entry of summary judgment on the underlying constitutional question regarding medical treatment would also preclude a finding of qualified immunity.  *See Smith v. Mack*, No. 13-cv-00246-VC, 2015 WL 3830662, at *4 (N.D. Cal. June 19, 2015).  It is not the type of case where a reasonable official could conclude that a particular approach to treatment was constitutional because comparable approaches had been blessed by some courts at the time of the violation.  *See Hamby v. Hammond*, 821 F.3d 1085, 1093 (9th Cir. 2016).

**IT IS SO ORDERED.**

Dated:  March 8, 2017

_____
VINCE CHHABRIA
United States District Judge